UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO:  14-CV-23071-GAYLES/TURNOFF

REGLA CABRERA,

       Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner,
Social Security Administration,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Plaintiff Regla Cabrera's (hereinafter "Plaintiff") Motion for Summary Judgment **(ECF No. 13)**, Defendant Carolyn W. Colvin's (hereinafter "Defendant") Motion for Summary Judgment **(ECF No. 18)**, and a Clerk's Notice of Magistrate Judge Assignment **(ECF No. 3)**. Upon review of the Motions, the court file,[1] the medical records, the applicable law, and being otherwise duly advised in the premises, the undersigned makes the following findings.

### Procedural Background

Plaintiff filed an application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("the Act") on January 21, 2011, alleging disability commencing on January 11, 2011.  **( R. 199)**. The claim was denied initially on March 22, 2011, and upon

---

[1]    The administrative record in this case is located on the Court's electronic docket (CM/ECF) at docket entry "ECF No. 7." For purposes of this Report and Recommendation, all references to the administrative record shall be cited as "R.," followed by the appropriate page number.

reconsideration on May 12, 2011.  **( R. 35, 96)**. Following the denial of her claim, Plaintiff timely filed a written request for a hearing on May 24, 2011.  **( R. 57)**.

During a pre-hearing conference held on May 7, 2012, Administrative Law Judge ("ALJ") Thomas W. Snook advised Plaintiff of her right to representation, which she waived.  **( R.  54)**. On September 13, 2012, Plaintiff appeared without counsel and testified before the ALJ. **( R. 52)**. In a decision dated February 22, 2013, the ALJ found that Plaintiff was not disabled.  **( R. 46)**.

Thereafter, Plaintiff retained counsel, and requested review of the ALJ's decision.  **( R. 26-27)**.  The ALJ's decision became the Commissioner's final decision when the Appeals Council of the Social Security Administration denied the request for review on July 12, 2014.     **( R. 1-4)**. The Complaint at bar challenges the ALJ's findings. **(ECF No. 1)**.

## Factual Background

Plaintiff, Regla Cabrera, is a naturalized citizen who was born in Cuba on March 26, 1967. **( R. 179, 399)**. She was 43 years old on the date she applied for disability benefits.  **( R. 45)**.   She was 45 years old when the ALJ issued his decision.  **( R.  35-46)**.  Plaintiff's education was limited to middle school.[2]  **( R. 60, 76, 235)**.  However, she is able to communicate in English.  **( R. 45)**. Her work experience is limited to low-paying hospital housekeeping jobs from 1992 until 2001. **( R. 85, 226-227, 393, 399)**.

## Medical Records

*Pre-Application Medical History*

The medical evidence dated prior to Plaintiff's alleged onset date shows that she received general medical care and psychiatric medication management for a depressive disorder from Jackson Memorial Hospital (Ambulatory Services/Outpatient) from January 2006 to April 2009.

---

[2] The record is unclear as to Plaintiff's level of education. Certain portions of the record suggest that she completed the fourth grade while others suggest that she completed the seventh grade.

( **R. 362-387, 431-32, 435-37, 451-74**).  During this time, Plaintiff's complaints included lack of motivation, anxiety, "good and bad days," irritable mood, difficulty sleeping, tiredness, tearfulness, sadness, photophobia, left eye pain, right hand skin lesion, and abdominal pain.  ( **R. 362, 365, 369, 371, 373, 383, 385, 468, 471**).  Plaintiff's medications during this period included: Prozac, Clonazepam, Klonopin, Vistaril, and Loraxepam.  ( **R. 362, 365, 367, 375**).  Plaintiff was also treated at Jackson's Clinic in March 2011 for benign essential hypertension, GERD, insomnia, headaches, and depression with anxiety. ( **R. 403-04, 429, 439-45**). At the time, Plaintiff was prescribed HCTZ, Temazepam, Nexium, and Effexor.  ( **R. 404**). Laboratory reports revealed that Plaintiff had low levels of Bilirubin and HDL, and elevated Triglycerides.  ( **R. 443**).

*Dr. Miro's Findings*

A Medical Disability Adjudicator from the Office of Disability Determinations scheduled an appointment for Plaintiff to undergo a "General Clinical Evaluation with Mental Status" examination with Mayra M. Miro, Psy.D. on February 18, 2011.[3] ( **R. 393-402**). Dr. Miro reviewed Plaintiff's medical records in furtherance of same. ( **R. 398**).  At the visit, Dr. Miro observed that Plaintiff's hygiene "was fair," that she was "tearful during the course of the evaluation," and that she was "excessively talkative." *Id.* Plaintiff's primary complaints included: lack of sleep; "hearing voices"; "standing at the window [to] [check out] whether someone is standing outside;" headaches; and frequent forgetfulness. *Id.* At the examination,  Plaintiff reported a history of depression and anxiety that began after the death of her brother and mother.  ( **R. 399**). Dr. Miro administered the WAIS-IV Digit Span subtest which revealed that Plaintiff's performance was "moderate to severely impaired for her chronological age." *Id.*

A mental status examination of Plaintiff revealed that her psychomotor behavior was normal.  ( **R. 400**). Her speech was clear, understandable, and at a normal rate. *Id.* However, she

---

[3] Dr. Miro is a licensed clinical psychologist.  ( **R. 398**).

showed excessive response delay on cognitive tasks. *Id*. Her thought processes were logical, coherent, and goal-directed with no flight of ideas or tangentially. *Id*. She evidenced some circumstantiality but there was no evidence of psychosis. *Id*. She showed limited capacity of verbal abstractions. *Id*. Her affect was tearful and her mood was dysphoric. *Id*.

During the evaluation, there was no evidence of perceptual abnormalities or responses to external stimuli; however, Plaintiff reported "hearing noises and voices." *Id*. Her symptoms included depressed mood, suicidal ideations, increased anxiety, restlessness, insomnia, lack of interest, irritability, and impatience. *Id*. Despite having reported a loss of appetite, Plaintiff reported weight gain. *Id*. She was oriented as to person, place, and time. *Id*. However, her concentration was moderately to severely impaired. *Id*. There were no indications of language disturbances. *Id*. Her immediate and remote memory were intact. *Id*. Her recent memory was normal; however her general fund of information was poor. *Id*. Although her abstract reasoning was fair, Plaintiff's judgment and insight were noted as poor. *Id*. She denied thoughts of suicide or homicidal ideation. *Id*.

Plaintiff reported her activities of daily living as: independent in self care; occasional cooking; house cleaning and organization; making her bed; frequently checks and closes all her windows at her home; "prefers to be in darkness inside her home;" driving to the supermarket for grocery shopping; going out together with her husband and daughter; and frequently visiting her daughter or other relatives along with her husband. ( **R. 401**).

Based on the foregoing, Dr. Miro conducted a diagnostic impression and concluded that Plaintiff had a major depressive disorder-recurrent-severe with psychotic features. ( **R. 401**). Dr. Miro assigned Plaintiff a global assessment of functioning score ("GAF") of 55.[4] *Id*. Based on her

---

[4] The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning. *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1162 n. 1 (10th Cir.2012) (citing Am. *Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 32, 34

behavioral observations, Dr. Miro found that Plaintiff did not appear competent for any type of employment. *Id.* She also found that Plaintiff lacked the emotional and cognitive functioning capacity to carry out work-related tasks and meet the expectations required in a work setting. *Id.* In this connection, Dr. Miro noted that Plaintiff is expected to show impairment in paying attention, following instructions and in dealing with work-related stress. *Id.* Additionally, she found that Plaintiff would have difficulty interacting with the public. *Id.*

  *State Agency RFC Assessments*

  On March 22, 2011, Keith Bauer, Ph.D., a state agency psychological consultant, reviewed the evidence and completed a Psychiatric Review Technique form and a Mental Residual Functional Capacity ("RFC") Assessment form. **( R. 410-426)**. Dr. Bauer concluded that Plaintiff's Major Depressive Disorder caused no restrictions on her daily living activities.   **( R. 420)**. He found that she had mild difficulties in maintaining social functioning; moderate difficulty in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. *Id.*

  Dr. Bauer found that Plaintiff's understanding and memory were not significantly limited. **( R. 424)**. He likewise found that her overall sustained concentration and persistence were not significantly limited. *Id.* He did note, however, that Plaintiff's ability was moderately limited in the following categories: maintaining attention and concentration for extended periods; completing a normal workday/workweek without interruptions from psychologically based symptoms. *Id.* He also found moderate limitations as to her performing at a consistent pace without an unreasonable number and length of rest periods. *Id.* Additionally, Dr. Bauer found that Plaintiff was not

---

(Text Revision 4th ed.2000)). GAF scores of 41 to 50 indicate serious symptoms (suicidal ideation, severe obsessional rituals, or frequent shoplifting) or any serious impairment in social, occupational, or school functioning (having no friends or being unable to keep a job); scores of 51 to 60 indicate moderate symptoms (flat affect and circumstantial speech or occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (having few friends or conflicts with peers or coworkers). *Id.*

significantly limited in social interaction. *Id.* Last, he found that she was not significantly limited in adaptation, with the only exception of being moderately limited in responding appropriately to changes in the work setting. *Id.*

Dr. Bauer concluded that Plaintiff was capable of the following: understanding and recalling simple to mildly complex instructions, following and executing simple to mildly complex directives, persisting at simple and routine tasks for a regular workday at an appropriate pace over weeks and months, relating with others in the work place, cooperating on routine tasks, accepting direction and general feedback, arranging transportation, avoiding hazards, and adapting to most changes and task demands on a sustained basis. **( R. 426)**.

*Dr. Mascaro's Findings*

Plaintiff's treating physician is Guari Mascaro, M.D.   **( R.  510)**. He has been treating Plaintiff, mostly as her general practitioner,[5] since May 2011.  *Id.* During a visit, she reported being depressed and sad. *Id.* She also reported insomnia. *Id.* She told the doctor that she had previously been treated with "psychotropic medications because of depression and anxiety."   **( R. 512)**. She also reported having tried to commit suicide with pills and that she "had the impression that someone calls her by name."   **( R. 510)**.  Based on the foregoing, Dr. Mascaro concluded that Plaintiff had "depression and anxiety at a moderate level."   **( R. 513)**.  He formed the following diagnostic impressions: auditory hallucinations, anxiety, depression, insomnia, and hypertension. *Id.* Dr. Mascaro prescribed Paxil, Temazapam, HCTZ, and Abilify. *Id.* Dr. Mascaro placed no limitations on Plaintiff's activities and scheduled her for follow-up treatment in one month. *Id.*

Dr. Mascaro examined Plaintiff at least seven (7) times from June to December of 2011, and eleven (11) times from January through November 2012.  **( R. 492-509)**. Throughout his office

---

[5]Plaintiff suggests, and the record reflects, that Dr. Mascaro has some background in psychiatry from Cuba. This issue, and related matters, shall be further addressed *infra.*

notes, Dr. Mascaro recorded that Plaintiff exhibited profound depression, sadness, energy loss, pessimistic ideations, poor emotional control, poor tolerance to frustration or stressful situations, and lack of motivation.  ( **R. 492-93, 495, 502-03, 505, 507, 508-09**).  However, during the course of his treatment, Dr. Mascaro repeatedly reported that Plaintiff responded well to medication, denied suicidal ideations or psychotic features, and had alleviated depression.  ( **R. 492, 494-500, 502, 504-07, 509**).    He also observed that "some level of depression [would] always [be] present." ( **R. 495**).

In addition to her depressive symptoms, Plaintiff reported right wrist pain, dizziness due to medication, arthritic pain in her left arm, otitis media, back pain, bilateral wrist pain, right wrist and hand pain, acid reflux after meals, and daytime somnolence. ( **R. 493-93, 496-99, 501, 503, 505-07**). Throughout her treatments with Dr. Mascaro, Plaintiff was diagnosed with auditory hallucinations, anxiety, depression, insomnia, hypertension, and GERD.  ( **R. 492-509**). The doctor listed Plaintiff's various medications with noted changes and discontinuations as: Paxil, Temazepam, HCTZ, Abilify, Celebrex, Geodon, Cipro, Zoloft, Nexium, Zolipidem, Naproxen. *Id.*

Upon the apparent request of the State agency and the ALJ, Dr. Mascaro completed Medical Source Statement forms[6] dated May 1, 2012 and November 28, 2012.  ( **R. 483-85, 488-491, 514-15**).  In the forms, Dr. Mascaro opined that Plaintiff's depression caused her moderate limitations in her ability to understand, remember, and carry out simple or complex instructions and make judgments on simple or complex work-related decisions.  ( **R. 483**).  Dr. Mascaro also opined that the claimant's depression and poor emotional control caused her moderate limitations in interactions with co-workers, understanding, remembering, and carrying out simple or complex instructions, and making judgments on simple or complex work-related decisions.  ( **R. 489**). In

---

[6]
The Medical Source Statement forms were used to evaluate Plaintiff's ability to perform mental work-related activities. ( **R. 483, 489**).

addition, he found that her depression caused her marked limitations in interacting appropriately with supervisors, and responding appropriately to usual work situations and to changes in a routine work-setting. *Id.* In his view, it would also cause her extreme limitations in interacting appropriately with the public. *Id.* Last, Dr. Mascaro noted that Plaintiff had a history of psychiatric treatment since she was a child. *Id.*

### Hearing:  Testimonies of Plaintiff, Plaintiff's Husband, and Vocational Expert

Appearing *pro se*, with the assistance of a Spanish interpreter, Plaintiff and her husband testified at the September 13, 2012 hearing.  A vocational expert ("VE") also testified.  ( **R. 52-71**). Plaintiff has not worked since 2001.  ( **R. 59**).  She stated that her husband drives her to places, including medical appointments.  She does not use the Metrorail because she is afraid of it.  ( **R. 60-61**). Additionally, Plaintiff testified that her housework is limited to "just pick[ing] up, fix[ing] little things here and there, but I am not able to clean the house."  ( **R. 61**). She does not cook because she is "afraid of the fire or the stove" but, she is capable of taking care of her personal needs such as bathing and dressing. ( **R. 62**). Additionally, Plaintiff confirmed that she sees a doctor every month. ( **R. 62**). She is right hand dominant but has tendinitis in that hand. ( **R. 63**). She stated that her medications "help me out a lot." ( **R. 64**). Finally, Plaintiff testified that she feels that she is unable to work because "many bad thoughts cross [her] mind. I already have made an attempt to commit suicide." *Id.*

Plaintiff's husband, Mario Arturo Martin, testified that he feels that his wife is incapable of working "due to the way that she behaves, [and] reacts to things… in a manner that is not [appropriate behavior for] a work environment to deal with other people."  ( **R. 66**). He added that his wife "pays very little attention to other people like she's floating in her mind somewhere else, absent minded, and once in a while she reacts very violently to things." *Id.* He reported that his wife

has poor memory and forgets when she is supposed to take her medication. *Id*. Last, he stated that after his wife takes her medication "she is now like a druggie." ( **R. 66**).

The Vocational Expert ("VE"), Jeanine M. Salek, testified that Plaintiff was a hospital cleaner who last worked in 2001. ( **R. 68**). She stated that those jobs are "unskilled and [are] medium level work" with an SVP of 2 (DOT# 38.687-018). *Id*. The ALJ posed a hypothetical where he asked if "full weight" were given to "Exhibit 11F, Dr. Mascaro's opinion," would she be able to "find some jobs." *Id*. He then asked the VE to consider someone in Plaintiff's position who is a "younger individual with a less than limited education" with "no past relevant work" and non-exertional limitations. Additionally with regards to non-exertional limitations, this hypothetical person would understand, remember, and carry out simple instructions as well as "make simple work related decisions, respond appropriately to supervision ... respond appropriately to co-workers, respond appropriately to usual work situations, and handle changes in routine work setting[s] appropriately." ( **R. 70**). In response to the hypothetical, the VE found that "she would be able to return to her previous work." *Id*.

### Summary of Plaintiff's Arguments For Reversal

By way of summary, Plaintiff claims that the ALJ's decision is not supported by substantial evidence and contains errors of law. (**ECF No. 13**). Specifically, Plaintiff claims that the Appeals Council erred by failing to remand this matter to the ALJ for consideration of newly submitted evidence. *Id*. Plaintiff also claims that the ALJ's finding that Plaintiff's sole mental limitation is that she is limited to unskilled work is not supported by the opinions of Drs. Mascaro, Miro, and Bauer. *Id*. Additionally, Plaintiff contends that the ALJ failed to properly consider her subjective complaints and as such, his credibility findings are not based on substantial evidence. *Id*. Lastly,

Plaintiff takes issue with the ALJ's failure to obtain vocational expert testimony given her claimed non-exertional limitations. *Id.* Each argument shall be addressed in turn below.

### Standard of Review

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. *Lewis v. Callahan*, 125 F.3d 1553, 1560 (11th Cir. 1997); *see also Bloodworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. *Foote v. Chater*, 67 F.3d 11553, 1560 (11th Cir. 1995); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the Commissioner's decision correctly applied the appropriate legal standards. *See Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). The Court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *See Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989).

However, the restrictive standard set forth above applies only to findings of fact. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). No presumption of validity attaches to the

Commissioner's conclusions of law, which are reviewed *de novo. Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)("The Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."); *see also Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982); *Martin*, 894 F.2d at 1529.

**Analysis**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423 (d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental [impairment(s)] are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work...." *Id.* § 423 (d)(2)(A). The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §404.1521(b).

Under the authority of the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. §§ 404.1520; 416.920(a)-(f). The analysis follows each step in order. As explained in more detail below, the analysis ceases if, at a certain step, the claimant is found, as a matter of law, either to be disabled or not disabled.

At step one, the ALJ must determine whether the claimant is employed (i.e. engaged in substantial gainful activity ("SGA"))[7]. 20 C.F.R. § 404.1520(a)(4)(I). If an individual engages in substantial gainful activity, then a finding of non-disability ensues thereby ending the inquiry. 20 C.F.R. § 404. 1520(b). If the individual does not engage in such activity then the evaluation

---

[7] Substantial gainful activity is defined as work activity that is both substantial and gainful. Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 416.972(a). Gainful work activity is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. § 416.972(b).

continues to step two. In this case, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 21, 2011, the application date. ( **R. 37, Finding 1**).

At step two, the ALJ must determine whether the claimant has a medically determinable severe impairment or a combination of severe impairments. 20 C.F.R. § 404.1520(a)(4)(ii). To be considered "severe," an impairment or combination of impairments must significantly limit an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520( c). If the judge does not find that the claimant suffers from a single severe impairment or a combination of impairments, then a non-disability finding results and the case terminates. *Zuni v. Astrue*, No. 8-21489-CIV, 2009 WL 2929388 (S.D. Fla. Sept. 9, 2009). If the claimant has at least one severe impairment, regardless of whether there are other severe impairments, the analysis proceeds to the third step. Here, the ALJ found Plaintiff had a severe impairment, i.e., an affective disorder that causes "more than minimal functional limitations in her ability to engage in work-related activities."  ( **R. 37, Finding 2**). The ALJ did not, however, find Plaintiff's wrist pain, GERD, and hypertension to be severe impairments since they cause the Plaintiff "less than minimal limitations in functioning." *Id.*

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity that meets or medically equals the criteria of an impairment listed in the Code of Federal Regulations. *See* 20 C.F.R. § 404.1520(d), Subpart P, Appendix 1. Some impairments are so severe, either alone or in combination with others, that if the claimant establishes such impairments, disability will be presumed and benefits are awarded without further inquiry. *See Gibson v. Heckler*, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985); *see also* 20 C.F.R. § 404. 1520(d). However, if the impairment does not meet this criterion, the ALJ determines the residual functional capacity ("RFC")[8] of the individual based on all the evidence in the record. 20 C.F.R. § 404.1520(e). Here, the ALJ found that Plaintiff's mental impairments did not meet the criteria of

---

[8] A claimant's RFC is his or her ability to do work despite his or her impairments. 20 C.F.R. § 404.1545(a)(1).

any listing of impairments, including § 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1 ( **R. 37, Finding 3**). The medical evidence showed no restriction on her activities of daily living, mild difficulties in maintaining social function and moderate difficulties in maintaining concentration, persistence or pace, with no evidence of episodes of decompensation, each of extended duration. ( **R. 37-38**).

At step four, the ALJ assesses the claimant's residual functional capacity and determines if the claimant can perform past relevant work. 20 C.F.R. § 404. 1520(4)(iv). The ALJ must consider all impairments, including those that are not severe. 20 C.F.R. § 404.1520(e). If the claimant is able to perform past relevant work, then disability is not established and benefits are not granted. On the other hand, if the claimant cannot perform past relevant work,  then a *prima facie* case of disability is established, and the analysis proceeds to the final step. 20 C.F.R. § 404.1520(a)(4)(iv). After consideration of the entire record, the ALJ determined Plaintiff had the RFC to perform a full range of work at all exertional levels as defined in the regulations.  ( **R. 39, Finding 4**). However, Plaintiff would have non-exertional limitations limiting her to being able to carry out short, simple instructions. *Id.*

In the final step, the burden of production shifts to the Commissioner to show that claimant is able to do other work that is available in significant numbers in the national economy considering the claimant's RFC, age, education and work experience. 20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. In this case, after finding that Plaintiff had no past relevant work, ( **R. 45, Finding 5**), the ALJ relied on the Medical-Vocational Guideline(s) (Grids) Rule 204.00 to determine that Plaintiff was capable of performing other work existing in significant numbers in the national economy.   ( **R. 45, Finding 9**).

To be eligible for disability benefits, Plaintiff bears the burden of proving not only that she has medically determinable impairments, but that they are so severe that they prevent her from engaging in any substantial gainful activity in the national economy. *Barnhart v. Walton*, 535 U.S. 212, 222-24 (2002); *see also Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003)("the claimant bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim.")(internal citation omitted). The inability to perform previous work relates to the type of work performed, not merely a specific prior job. *See Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986).   After applying the above noted inquiry, and upon careful consideration of the entire record, the ALJ found that Plaintiff was not disabled.   ( **R. 37, 45-46, Finding 10**).   Plaintiff, of course, disagrees with the ALJ's findings. Her specific arguments for reversal, listed *supra*, shall be addressed below.

*Newly Submitted Evidence*

As noted above, Plaintiff's argues that the Appeals Council committed error when it failed to remand this action to the ALJ for consideration of the newly submitted evidence. **(ECF. No. 18)**. With few exceptions, the claimant is allowed to present new evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007); 20 C.F.R. § 404.900(b). The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if "the administrative law judge's action, findings, or conclusion[s] [are] contrary to the weight of the evidence currently of record." *Id*; *See* § 404.970(b). However, even in light of new evidence, the Appeals Council may deny review if the record shows no error on the part of the ALJ. *See Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 784-85 (11th Cir. 2014)(affirming where the Appeals Council accepted the claimant's new evidence "but denied

review because the additional evidence failed to establish error in the ALJ's decision").   In this connection, the Eleventh Circuit has expressly held that the Appeals Council is not required to explain its reasons for denying a request for review. *Id.*

In this case, the Appeals Council specifically stated that it considered the additional evidence. In so doing, it prepared a list of the documents reviewed and attached same to its denial. ( **R 1-9**).  The list includes, among other things, Dr. Mascaro's sworn statement, wherein he states that he practiced psychiatry for thirty (30) years *in Cuba* and was a professor of psychiatry at the University of Havana.  ( **R. 309-314**).   As correctly noted by Defendant, the statement does little more than shed light on Dr. Mascaro's background.   From the record, it appears that Plaintiff sought treatment from Dr. Mascaro primarily as a general practitioner.   Even if his opinion was treated as coming from a specialist, i.e., a psychiatrist, it remains unsupported by his own clinical records. Similarly, Dr. Mascaro's assertion that Plaintiff met the listings in § 12.04 are of no consequence.   Since a finding that a claimant meets or equals a listing is dispositive of a case, such a finding is reserved for the ALJ.   <u>Cooney v. Colvin</u>, 4:14-cv-00059-HBB, 2015 WL 632312 (W.D. Ky. Feb. 13, 2015)

As to Dr. Miro, the Appeals Council stated that her evaluation presented "new information about a later time.[9]"  ( **R. 2**). In its view, the evidence submitted simply did not merit changing the ALJ's decision.  ( **R. 2, 5, 309-14**).   Indeed, the additional records appear to be cumulative and related to previous treatment notes that were already considered by the ALJ. As a result, the Appeals Council committed no error in denying review, even in light of the newly submitted evidence.

---

[9]It appears that the May 2013 assessment was based on a single exam that was conducted in February 2011.

*Opinions of Dr. Mascaro, Dr. Miro, and Dr. Bauer*

As previously mentioned, Plaintiff's second point of contention for reversal is that the opinions of Drs. Mascaro, Miro, and Bauer fail to support the ALJ's finding that Plaintiff's sole mental limitation is that she is limited to unskilled work. **(ECF. No. 18)**. The Commissioner disagrees. **(ECF. No. 13)**.

Generally, the weight assigned to each medical source is dependent on several factors including: whether the physician examined the claimant, whether the physician treated the claimant, the evidence presented by the physician in support his/her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. *See* 20 C.F.R. § 416.927 ( C ). The testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986); *Broughton v. Heckler*, 776 F.2d 960, 961–62 (11th Cir. 1985).   Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir.2004).

In this connection, an ALJ "must specify what weight is given to a treating physician's opinion" and "must clearly articulate the reasons for giving less weight to the opinion of a treating physician."*MacGregor*, 786 F.2d at 1053. *See also Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).   The failure to do so is reversible error. *Id.*

Dr. Mascaro

Here, the ALJ provided the following reasons, supported by substantial evidence, for according "little weight" to Dr. Mascaro's opinion:

> I find that Dr. Mascaro's opinion is inconsistent with his contemporaneous treatment
> notes which document that the claimant responded well to treatment and that her

auditory hallucinations were resolved with medication. Moreover, Dr. Mascaro's treatment notes do not document any deficits in concentration or memory which would warrant his assessment that the claimant would have moderate difficulties in understanding, remembering, and carrying out simple tasks. Further, Dr. Mascaro's treatment notes do not evidence any behavioral oddities, outbursts of temper, etc., that would warrant his assessment that the claimant would have moderate to marked difficulties interacting with co-workers, the public or supervisors.

( **R. 44**).

The ALJ was correct in according less weight to Dr. Mascaro's opinion because the doctor failed to provide objective medical evidence in support of his findings. *See* 20 C.F.R. § 416.927(c)(3)("the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the agency] will give that opinion."); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Where a treating physician's findings are unsupported by objective evidence from the physician's own treatment notes, the ALJ has good cause to discount the opinion as inconsistent. *See, e.g., Brown v. Comm'r of Soc. Sec.*, 442 F. App'x 507, 512 (11th Cir. 2011); *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 740 (11th Cir. 2008)(finding good cause existed for ALJ to discredit treating physician's opinions where nothing in his treatment notes indicated that claimant was precluded from working). Consistent with the above, the undersigned finds that there is substantial evidence to support the ALJ's decision to accord little weight to Dr. Mascaro's opinion.

Dr. Miro

Second, Plaintiff argues that the ALJ failed to properly weigh the opinion of Dr. Miro. (**ECF. No. 18**).   Again, the ALJ provided solid reasons, supported by substantial evidence, for assessing little weight to Dr. Miro's opinion. ( **R. 44**). The ALJ specifically stated:

I find that her opinion is inconsistent with her psychological findings. Dr. Miro opined that the claimant did not have the emotional and cognitive capacity to carry out work-related tasks and meet the expectations of a work setting. However, she

found that the claimant's psychomotor activity was normal. Her speech was clear and understandable. Her thought process was logical, coherent, and goal directed. She had no flights of ideas or tangentiality. Her recent, immediate, and remote memories were intact. Therefore, I find that her opinion regarding the claimant's abilities to perform work related functions is based upon the claimant's subjective reports rather than any objective findings.

*Id.*

Subjective complaints are not an acceptable basis for an opinion. *See* 20 C.F.R. § 416.927 ( C); *see also Crawford*, 363 F.3d at 1159-60; *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013)(holding substantial evidence supported ALJ's decision to give less weight to an opinion that "relied too significantly on [claimant's] subjective reports"). Moreover, if the Court is able to conclude that the ALJ properly considered the claimant's condition as a whole, then "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). In light of same, the undersigned finds that there is substantial evidence to support the ALJ's decision to accord little weight to Dr. Miro's opinion.

Dr. Bauer

Plaintiff likewise argues that Dr. Bauer's opinion fails to support the ALJ's RFC finding. **(ECF. 13)**.   Specifically, Plaintiff suggests that although the ALJ gave Dr. Bauer considerable weight, he did not account for Dr. Bauer's "checked boxes" wherein he indicates that Plaintiff was "moderately limited in her ability to perform at a consistent pace without an unreasonable number and length of rest periods and in her ability to respond appropriately to supervisors. **(ECF No. 15)**. The checked boxes at issue are located on Section I, i.e., the "summary conclusions" section, of the Mental Residual Functional Capacity Form (MRFC).    As correctly noted by Defendant, the Commissioner's Program Operations Manual (POMS) indicates, and the Eleventh Circuit recognizes, that Section I does not constitute an RFC assessment. *See* POMS DI 24510.060 (B)(2);

*see also Jones v. Comm'r of Soc. Sec.*,78 F. App'x 610, 612 (11th Cir. 2012)(The checked boxes are only part of a worksheet that "does not constitute the [doctors' actual RFC assessment]."). By way of example, checking the box "Moderately Limited" means only that the claimant's capacity is impaired; it does not indicate the degree and extent of the limitation. *Id.; see also* § 24510.063(B)(2). After checking the boxes, the doctor is still required to detail his actual RFC assessment in Section III of the form. *Id.* § 24510.060(B)(4). Because the checkmarks did not reflect Dr. Bauer's actual assessment of Plaintiff's limitations, it was not necessary for the ALJ to specifically include same in his RFC findings.

Here, the ALJ gave "considerable weight" to Dr. Bauer's opinion, as set forth in Section III of the MRFC which is titled "Functional Capacity Assessment." ( **R. 44, 424**). Section III reads in pertinent part,

> Understanding and Memory
> She can understand and recall simple to mildly complex instructions. She can follow and execute simple to mildly complex directives.
>
> Sustained Concentration and Persistence
> She can persist at simple and routine tasks for a regular workday at an appropriate pace and can sustain at this level over weeks and months.

( **R. 426**).

Indeed, the ALJ's findings track the above language. Specifically, the ALJ stated, "[Dr. Bauer] opined that the claimant could persist at simple routine tasks for a regular workday at an appropriate pace and could sustain at this level over weeks and months." ( **R. 45**). In so doing, he found that Dr. Bauer's opinion was consistent with the medical evidence of record. ( **R. 44-45**). While the ALJ gave significant weight to Dr. Bauer's opinions, he did not adopt, nor was he required to adopt, the entire opinion as Plaintiff's RFC. While an ALJ may decide to adopt all opinions expressed in a medical source statement, no medical source statement constitutes an RFC

assessment. The RFC is an administrative finding that is strictly reserved for the Commissioner. *See* SSR 96-5p, 1996, 1996 WL 374183 (S.S.A.); *see also*, 20 C.F.R. § 416.927(d)(2).

To this end, the ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation(s)." 20 C.F.R. § 404.1527(f)(2)(I); *see Milner v. Barnhart*, 275 Fed.Appx. 947, 948 (11th Cir. 2008). Upon careful review, and consistent with the above, the undersigned finds no error.

*Plaintiff's Subjective Complaints*

Plaintiff's third argument for reversal is that the ALJ did not properly consider her subjective complaints. In her view, his credibility findings are not based on substantial evidence. **(ECF. No. 18)**. Defendant disagrees and argues that Plaintiff has failed to meet her burden of production and persuasion. **(ECF. No. 13)**.

It is well established that pain alone can be disabling. *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987). With regards to subjective complaints of pain, Plaintiff must satisfy the following pain standard. First, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged pain arising from that condition, or that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)(citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).

In this case, as noted previously, the ALJ found that Plaintiff had a severe impairment, i.e. an affective disorder that causes "more than minimal functional limitations in her ability to engage in work-related activities." ( **R. 37, Finding 2**). Thus, the first prong is satisfied. As to the second prong, the ALJ found that Plaintiff's mental impairments did not meet the criteria of any listing of

impairments, including those in § 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1.   ( **R. 37,**
**Finding 3**). If the objective medical evidence does not confirm the severity of the claimant's
alleged symptoms, but the claimant establishes she has an impairment that could reasonably be
expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of
the claimant's alleged symptoms and their effect on the claimant's ability to work. *See* 20 C.F.R. §
416. 929(c),(d); SSR 96-7p; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). "Whether or
not the condition [can] be expected to give rise to the complain[t] of pain is a question of fact
subject to [the] substantial evidence standard of review." *Lamb v. Brown*, 847 F.2d 698, 702 (11th
Cir. 1988).

However, the credibility of Plaintiff's testimony must also be considered. *Id.* If the ALJ
discredits the subjective testimony, he must articulate explicit and adequate reasons for doing so.
*Wilson*, 284 F.3d at 1225. Failure to articulate the reasons for discrediting subjective testimony
requires, as a matter of law, that the testimony be accepted as true. *Id.*  While an ALJ may not reject
a plaintiff's subjective complaints of pain simply by lack of objective evidence, the allegations of a
severe impairment should be supported by medically acceptable clinical and laboratory diagnostics
techniques. *Watson v. Heckler*, 738 F.2d 1169, 1172-1173 (11th Cir. 1984). Put another way,
allegations of pain should be weighed with the overall record which includes clinical data,
demeanor at the hearing, testimony, frequency of treatment, response to treatment, use of
medications, daily activities, motivations, credibility and residual functioning capacity. *Id.*  In sum,
a plaintiff's claim of pain or other subjective symptoms, without more, is not conclusive evidence
of disability. *See Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987).

Here, the ALJ determined that Plaintiff's statements regarding the intensity, persistence, and
functionally limiting effects of her alleged depression and other symptoms were not credible. ( **R.**

44). In this regard, the ALJ specifically delineated his reasons for rejecting Plaintiff's testimony. *Id.* The ALJ noted that Plaintiff's medical records are devoid of any findings that her depression and other symptoms were of disabling severity. *Id. See* 20 C.F.R. § 416. 929 ( C); (d); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26. The ALJ further noted that Plaintiff received only conservative treatment for her alleged symptoms. *Id. See* 20 C.F.R. § 416. 929(c)(3)(v); SSR 96-7p; *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996). Moreover, the ALJ found that Plaintiff had not been hospitalized or required emergency room treatment during any relevant time. *Id.*

As noted above, the ALJ mentioned that Plaintiff had not sought mental health treatment from a psychiatrist or psychologist but, instead, relied upon her general practitioner to prescribe her psychotropic medications. *Id.* Plaintiff also acknowledged that her medications improved her functioning, and the medical records reflect that she responded well to same. *Id. See* 20 C.F.R. § 416. 929(c)(3)(iv); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984); *see also Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)(finding that medical conditions that can reasonably be remedied by medication are not disabling). Contrary to her testimony, wherein she testified that she could not perform any household chores, cooking, or driving, the ALJ noted that Plaintiff reported a greater degree of functioning at Dr. Miro's consultative psychological examination. ( **R. 43-44**). Lastly, the ALJ found that there was no medical evidence that suggested decompensation in mental functioning that would have caused greater restrictions in Plaintiff's activities of daily living. ( **R. 44**). In addressing decompensation, the ALJ notes that Plaintiff reported to having attempted suicide with pills. ( **R. 43, 510**). No other information, record of treatment, or hospital stay exists as to this alleged suicide attempt. The ALJ did, however, note that there were no known attempts at suicide within the last year. ( **R. 43**).

In sum, the ALJ examined Plaintiff's testimony in conjunction with the medical records, as well as the absence of treatment for certain ailments, to support his credibility findings. Upon careful review, the undersigned finds no error by the ALJ.

*Vocational Expert Testimony*

Plaintiff's final argument for reversal is that the ALJ failed to obtain vocational expert testimony given Plaintiff's non-exertional limitations. **(ECF. No. 18)**. Defendant, on the other hand, contends that the ALJ properly relied on the Grids as a framework to find that Plaintiff was not disabled. **(ECF. No. 13)**.

Here, the ALJ was not required to utilize a vocational expert, and sole reliance on the grids was proper. The grids are tables that assess a claimant's ability to work by "matching the claimant's age, education, and work experience with his work capability." 20 C.F.R. pt. 404, subpt. P, app.2. In the *Phillips* case, the Eleventh Circuit established that if the ALJ determines that the claimant can perform a wide range of work and his/her "nonexertional limitations do not significantly limit h[is] work skills," then it is proper for the ALJ to solely rely on the grids to establish if the claimant is disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004); *see also, Royal v. Astrue*, 2011 WL 1085612 at * 8 (S.D. Fla. 2011)(the existence of non-exertional limitations does not, alone, require the ALJ to use a vocational expert in place of the grids).

Here, the ALJ looked to the objective medical evidence to determine that Plaintiff's nonexertional limitations "have little or no effect on the occupational base of unskilled work at all exertional levels" and that a finding of "'not disabled' [was] therefore appropriate under the framework of § 204.00 in the Medical-Vocational Guidelines." ( **R. 45**). Consistent with the above, the undersigned finds no error.

## Conclusion And Recommendation

Based on the foregoing, and consistent with this Court's limited scope of review, the undersigned finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is **RESPECTFULLY RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**. Accordingly, it is **RESPECTFULLY RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED (ECF No. 13)**, and that Defendant's Motion for Summary Judgment be **GRANTED (ECF No. 18)**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. *Loconte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**RESPECTFULLY RECOMMENDED** in chambers at Miami, Florida on this ___ day of August 2015.

_____
WILLIAM C. TURNOFF
UNITED STATES MAGISTRATE JUDGE

cc:    Honorable Darrin P. Gayles
       Counsel of Record